UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LESLIE JAMES CRENSHAW,

    Plaintiff,

v.                                                                 Case No. 8:14-cv-1941-T-27AEP

SYLVESTER LEWIS, et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendants Boldrige, Lawton, and Lopez's Motion to Dismiss Plaintiff's Civil Rights Complaint (Dkt. 23),[1] and Plaintiff's response in opposition (Dkt. 26). Upon consideration, Defendants' motion to dismiss is GRANTED.

## I. ALLEGATIONS OF THE COMPLAINT

The complaint names as Defendants three Florida Department of Corrections officers (Sarah Boldrige, Charles Lawton, and Jamie Lopez) at Avon Park Correctional Institution (where Plaintiff was incarcerated at the time of the alleged events), and one former correctional officer (Sylvester Lewis). Plaintiff alleges that on March 25, 2013, he was working at the prison's canteen when he was approached by Lewis, Lawton, and Lawton's son. Plaintiff asked them "How can I help you all?" Lewis stepped in front of Plaintiff and stared at him. Lawton stated that they had been fishing and came to get something. Lewis then stated "You're gonna give me mine," and punched Plaintiff in his face. Plaintiff stumbled backward and asked "What you do that for?"

As Lewis moved toward Plaintiff, Lawton rushed and grabbed Lewis. Lawton told Lewis

---

[1] Defendant Lewis has not been served with initial process, and has not joined in the motion to dismiss.

"Man, you're about to make me lose my job. We need to go," and "I got my son out here and you doing this. You need to go." Lawton attempted to move Lewis out of the canteen. Lewis, however, attempted to push past Lawton toward Plaintiff, and in doing so both he and Lawton fell to the floor. Plaintiff could not see Lawton and Lewis at this point, but heard Lawton say "You done hurt me."

Boldrige then entered the canteen and stated "I don't want to know what is going on. You'll have to handle that by yourself. I'll be back later." At that moment, Lawton was on top of Lewis attempting to hold him down on the ground. Lawton had blood on his face, attempted to conceal his face with his hands, and told Boldrige that he "slipped and fell." Lawton was able to get Lewis out of the canteen. Plaintiff handed Lawton a paper towel to clean the blood on his face. As Lawton was leaving the canteen and closing the door behind him, he told Lewis "You need to leave."

Plaintiff cleaned the blood off the canteen floor. He looked out the canteen window and saw Lawton kneeling on the grass with his hands covering his face, and Lewis standing over Lawton. Plaintiff saw Lopez approach Lawton and Lewis, then push Lewis away from Lawton. Plaintiff retrieved gauze from a first-aid kit to take to Lawton. Plaintiff asked Lawton's son to take the gauze to Lawton, but Lawton's son appeared too afraid to do so. Plaintiff brought the gauze to Lawton, who was being helped to his feet by Lopez. Lewis then advanced toward them. Plaintiff returned to and locked himself in the canteen.

Lopez subsequently entered the canteen, gave Plaintiff his glasses to hold, and told Plaintiff that he would return for his glasses. Lopez, however, did not return for his glasses. Therefore, Plaintiff took the glasses to the control room and gave them to a staff member. Plaintiff then walked outside, sat in the parking lot, and waited for someone to check on and speak to him. No one, however, came to talk to him.

As Boldrige was walking to her car, Plaintiff approached her and asked her to have Lawton come speak to him. She told Plaintiff that she would have Lawton speak to him. Plaintiff told Boldrige that he wanted to speak to her before he reported the incident to Mr. Johnson, the Assistant Warden. Boldrige stated "I don't care if you tell Mr. Johnson what happened." Plaintiff then asked Boldrige "how can an inmate defend himself against an attack when we are told not to touch anyone?" Boldrige answered "The only thing I can say is if it were me, I'll defend myself." Plaintiff then asked her how Lawton was doing. Boldrige replied "Sgt. Lawton is at the hospital, and the other guy (Lewis) was picked up by the Sheriff's Department."

Plaintiff returned to the canteen. A nurse entered the canteen, saw Plaintiff's lip, and asked him if someone had hit him. Plaintiff answered "no" because he "was waiting to talk to someone that [he] could trust."

Later, Sgt. Tillis entered the canteen, saw Plaintiff, and asked Plaintiff "are you alright?" Plaintiff "told him everything." Sgt. Tillis asked if Plaintiff had been to medical, and if the incident had been reported. Plaintiff responded that no one had taken him to medical, and that he did not know if the incident had been reported. Sgt. Tillis left the canteen. Approximately twenty minutes later, Sgt. Tillis called Plaintiff and told him to lock the canteen and see him at the control room. When Plaintiff arrived at the control room, Sgt. Tillis informed him that the incident had not been reported, that "this is not going to get pushed under the rug," that he was taking Plaintiff "to get checked out," and that the Captain wanted to see Plaintiff.

After Plaintiff was examined by medical staff, Captain Rossier interviewed Plaintiff regarding the incident and took photographs. Plaintiff told Rossier that he did not want to be confined or lose his canteen job over the incident. Rossier responded that Plaintiff had done nothing

wrong and was not at fault. Rossier instructed Plaintiff to prepare a written statement, told him that the duty warden and Inspector General had to be notified, and informed him that he may have to go to "lock up" until the next day. After "the official and necessary paperwork had been filed and processed," Plaintiff was released from confinement and returned to his canteen job.

Plaintiff filed a grievance against Boldrige in which he complained that Boldrige had witnessed the incident but failed to report it. The administration "failed to respond" and "fail[ed] to log the grievance complaint." Plaintiff spoke to Assistant Warden Johnson, who told Plaintiff that there was nothing he could do because the Inspector General was handling the matter and had not concluded the investigation. Plaintiff subsequently filed a grievance with the Florida Department of Corrections' central office. In response, the Department indicated that it was the responsibility of the Inspector General's Office to handle the matter.

## II. STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. Rule 12(b)(6) states that any Defendant may assert the defense of "failure to state a claim upon which relief can be granted" to a claim for relief. In deciding whether to grant a motion to dismiss on this ground, a court must accept "the allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Starosta v. MBNA America Bank. N.A.*, 244 Fed. Appx. 939, 941 (11th Cir. 2007) (unpublished) (quoting from *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005)). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions. . . ." *Bell Atlantic Corp. et al. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

4

Although the court must afford a *pro se* litigant wide leeway in pleadings, a *pro se* litigant is nonetheless required to satisfy necessary burdens in that he is "not relieved of his obligation to allege sufficient facts to support a cognizable legal claim," and "to survive a motion to dismiss, a Plaintiff must do more than merely label his claims." *Excess Risk Underwriters. Inc. v. Lafayette Ins. Co.*, 208 F. Supp. 2d 1310, 1313 (S.D. Fla. 2002). Dismissal is, therefore, permitted "when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Group. Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (citing *Marshall City Bd. Of Educ. v. Marshall City Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

## III. DISCUSSION

### A. Failure to Report Incident

Plaintiff alleges that Defendants Boldrige, Lawton, and Lopez failed to report that Lewis punched Plaintiff and thereby "gave rise [to] unsafe living conditions." Plaintiff's claim sounds in an Eighth Amendment violation for unsafe prison conditions. *See Reid v. Sec'y, Fla. Dep't of Corr.*, 486 Fed. Appx. 848, 851 (11th Cir. 2012) (unpublished) ("The Eighth Amendment prohibition of cruel and unusual punishment requires prison conditions to meet a certain constitutional minimum.") (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To establish a violation of the Eighth Amendment, the plaintiff must show an objectively "sufficiently serious" deprivation, and that "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]" *Farmer*, 511 U.S. at 834. The plaintiff must also show that the prison official had a "sufficiently culpable state of mind." *Id.*

The allegations of the complaint fail to show that Defendants' alleged failure to report the incident resulted in an objectively sufficient serious deprivation of rights. According to the

complaint, Plaintiff reported the incident to Sgt. Tillis shortly after it happened, Captain Rossier interviewed Plaintiff regarding the incident and took photographs, and the incident was reported to the Inspector General's Office, which investigated the matter. There is no allegation that Plaintiff was harmed in any way as a result of any delay in reporting the incident.

Additionally, to the extent the complaint alleges that Defendants violated the Florida Administrative Code in failing to report the incident (see Dkt. 1, p. 12, ¶ 11), a violation of standard procedures, in and of itself, is not a basis for relief in an action under § 1983. *See Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir.), *cert. denied*, 531 U.S. 1077 (2001) ("failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence").

Accordingly, Plaintiff's "failure to report" claim will be dismissed for failure to state a claim on which relief can be granted.

**B. Conspiracy claim**

The complaint alleges, in wholly conclusory fashion, that Boldrige, Lawton, and Lopez engaged in a conspiracy to cover up the incident. "To prevail on a § 1983 conspiracy claim a plaintiff must show that an agreement between two or more people (at least one of whom is a state actor) to violate his constitutional rights resulted in an actual violation of those rights." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1191 (11th Cir. 2011) (citation omitted). "To state a claim for conspiracy, a complaint must contain more than just vague and conclusory allegations. . . . . [T]he complaint must contain 'enough factual matter (taken as true) to suggest that an illegal agreement was made.'" *Allen v. Sec'y, Fla. Dept. Of Corrections*, 578 Fed. Appx. 836, 840 (11th Cir. 2014) (unpublished) (quoting *Twombly*, 127 S. Ct. at 1965).

Plaintiff has not pleaded sufficient facts to support a plausible inference of an agreement between the Defendants to violate his constitutional rights. All that he has offered are legal conclusions, which are patently insufficient to state a cause of action. *See Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). Additionally, even if Defendants conspired to deprive Plaintiff of his constitutional rights, Defendants would be protected by the intracorporate conspiracy doctrine.

"The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). The doctrine applies to public entities such as a municipality and its personnel. *See Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001) (applying intracorporate conspiracy doctrine to bar § 1985(3) claim against two city employees); *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 768 (11th Cir. 2000) (rejecting employee's § 1985(3) claim where employee alleged civil conspiracy among county employees); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977) (applying intracorporate conspiracy doctrine to shield public university from § 1985(3) liability).

As the intracorporate conspiracy doctrine bars conspiracy claims against multiple employees of the same city (Denney), county (Dickerson), and public university (Chambliss), it logically follows that the doctrine likewise applies to Boldrige, Lawton, and Lopez as employees of the same department within the Florida Department of Corrections. *See, e.g., Davis v. Hodges*, 2014 U.S. Dist. LEXIS 129401, at *24-26 (M.D. Fla. Sept. 16, 2014) (dismissing conspiracy claim based on intracorporate conspiracy doctrine "[s]ince all of the Defendants were Florida Department of

Corrections' (FDOC) employees at the time of the incident[.]").

In sum, the complaint contains no plausible allegations of a conspiracy among the Defendants to sustain a § 1983 action, and the conspiracy claim fails under the intracorporate conspiracy doctrine.

## C. Denial of medical treatment

Plaintiff alleges that Boldrige, Lawton, and Lopez violated his Eighth and Fourteenth Amendment rights because they denied him medical treatment after Lewis struck him. A § 1983 claim for a violation of the Eighth Amendment arises when prison officials act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). With regard to the first prong, a "serious medical need" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). In general, serious medical needs are those "requiring immediate medical attention." *Hill*, 40 F.3d at 1190.

The complaint fails to allege facts indicating that Plaintiff had an objectively serious medical need. Although Plaintiff indicates that Lewis' punch caused his mouth to bleed, Plaintiff does not allege that he actually required medical treatment.[2] Additionally, it is apparent from the complaint that Plaintiff did not require "immediate medical attention." After Lewis punched Plaintiff, Plaintiff

---

[2]The complaint alleges that Plaintiff was "checked out by medical staff." (Dkt. 1, docket p. 11 at ¶ 10).

cleaned the blood off the canteen floor, took gauze outside to give to Lawton (who himself was bleeding from the struggle with Lewis), returned to the canteen, took Lopez's glasses to the control room, went outside again and sat in the parking lot waiting to speak to Boldrige, spoke to Boldrige, then again returned to the canteen. When the nurse saw Plaintiff in the canteen, she did not provide Plaintiff with, or send Plaintiff for, medical attention. And, Plaintiff did not request medical attention from the nurse. Plaintiff's own actions belie any assertion that he had an objectively serious medical need.

Even if Plaintiff had a serious medical need, the allegations of the complaint fail to show Defendants were deliberately indifferent to that need. To meet the second prong of deliberate indifference, a plaintiff must allege that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregard[ed] that risk, and (3) [engaged in] conduct that is more than gross negligence. *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (citation omitted). "With regard to gross negligence in a delay-of-treatment case, the relevant factors include: '(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay.'" *Alsobrook v. Alvarado*, 477 Fed. Appx. 710, 712 (11th Cir. 2012) (upublished) (quoting *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007)).

Plaintiff has failed to allege sufficient facts to demonstrate that his injury constituted a serious medical need. Moreover, there are no facts indicating that the short delay in receiving medical attention caused further injury or suffering, or worsened his condition. Finally, there was good reason for the delay, namely, Lawton was scuffling with Lewis to prevent Lewis from further attacking Plaintiff, Lawton was injured and taken to the hospital, Boldrige and Lopez apparently were involved in separating Lawton and Lewis from each other, and Plaintiff did not initially request

or seek medical attention.

Accordingly, Plaintiff's claim will be dismissed because it fails to state a claim for deliberate indifference to a serious medical need.

**D. Qualified Immunity**

Defendants assert that they are entitled to qualified immunity with regard to Plaintiff's claims that they denied him medical treatment and failed to report that Lewis punched him. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted) (quotation omitted). To be entitled to qualified immunity, a government official first must demonstrate that "'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)). If the defendant satisfies this burden, then the court must grant qualified immunity unless the plaintiff can demonstrate first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officers, and, second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009).

It is clear that Boldrige, Lawton, and Lopez were acting within the scope of their discretionary authority during the course of the alleged violations. Additionally, for the reasons discussed, Plaintiff has not alleged facts that establish a constitutional violation with regard to these claims. Accordingly, Defendants are entitled to qualified immunity as to those claims.

**E. Eleventh Amendment Immunity**

Boldrige, Lawton, and Lopez assert that claims against them in their official capacities are barred by Eleventh Amendment immunity (Dkt. 23 at p. 13). The Eleventh Amendment prohibits federal courts from exercising jurisdiction over lawsuits against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *Lassiter v. Alabama A & M University*, 3 F.3d 1482, 1485 (11th Cir. 1993). By extension, the Eleventh Amendment also bars Section 1983 cases against state officials sued in their official capacities because in such cases, the state is considered to be the real party in interest since an award of damages would be paid by the state, and not the state official. *Cross v. State of Ala.*, 49 F.3d 1490, 1503 (11th Cir. 1995).

Here, to the extent Defendants are sued in their official capacities, they are protected by Eleventh Amendment immunity. "Congress has not abrogated the states' sovereign immunity for purposes of section 1983 suits for damages, and Florida has not waived its immunity with regard to such suits." *Wusiya v. City of Miami Beach*, 614 Fed. Appx. 389, (11th Cir. 2015) (unpublished) (citing *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1512, 1520 (11th Cir. 1986)). Accordingly, Plaintiff's claims against Boldrige, Lawton, and Lopez in their official capacities will be dismissed.

**G. Claims against Lewis[3]**

Plaintiff brought this action under 42 U.S.C. § 1983, contending that Lewis violated his rights

---

[3]Lewis did not join in Defendants' motion to dismiss. Nevertheless, because Plaintiff is a prisoner proceeding without prepayment of the filing fee under 28 U.S.C. § 1915(a)(1) (see Dkt. 7), this court must review the complaint and dismiss the case if the claims presented fail to state a claim upon which relief can be granted. § 1915(e)(2)(B)(ii). "Although screening of complaints under § 1915(e) is generally accomplished early in a case, the requirement is ongoing, and courts 'shall dismiss the case at *anytime*' upon a determination that the complaint cannot be maintained." *Letzgus v. Bell*, 2011 U.S. Dist. LEXIS 32036, at *1 (E.D. Mich. Mar. 28, 2011) (emphasis in original).

under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment and his right to due process. Section 1983 provides a mechanism for seeking redress for an alleged deprivation of a litigant's federal constitutional and federal statutory rights, but only by persons acting under color of state law. Plaintiff does not allege that Lewis was a state actor. Rather, he alleges that at the time of the incident, Lewis was an "ex-F.D.O.C. officer. . . ." (Dkt. 1, docket p. 16). Plaintiff therefore has failed to state a section 1983 cause of action against Lewis. *See Am. Mfrs. Mur. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (citations and quotations omitted). Accordingly, Plaintiff's claims against Lewis will be dismissed.

## H. Violations of State Constitution

Plaintiff alleges that Defendants' actions violated his "state constitutional rights." Plaintiff, however, has not identified the state constitutional rights he alleges were violated. Therefore, Plaintiff has failed to state a claim upon which relief can be granted under Florida law. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

## I. Remaining claims[4]

In the complaint, Plaintiff alleged, in pertinent part, that Boldrige "did everything conceivable to hinder and prolong the investigation by way of knowingly, intentionally, and willfully providing false, untrue, inaccurate, and conflicting statements and information." (Dkt. 1, docket p. 14). False statements by a prison official during a prison investigation do not themselves give rise to a constitutional claim. *See Knox v. Wainscott*, 2003 U.S. Dist. LEXIS 13785, 2003 WL 21148973, at *9 (N.D. Ill. May 14, 2003) ("However, the plaintiff has no separate cause of action against the

---

[4]In their motion to dismiss, Defendants did not respond to these two remaining claims. This is, perhaps, understandable, as Plaintiff's allegations with respect to these claims are brief and buried in his other claims.

defendant Lang for falsifying an injury report. Lang may have engaged in professional misconduct if she fabricated documents to cover up wrongdoing committed by her fellow officers. Nevertheless, her actions did not violate any constitutional right."). Additionally, Plaintiff has alleged no consequences resulting from Boldrige's alleged false or inaccurate statements during the investigation. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted.

Finally, Plaintiff alleged that Lawton failed to protect him from Lewis (Dkt. 1, docket pp. 14-15). Specifically, Plaintiff alleged:

> Sgt. Lawton's actions and inactions contributed to the salvage [sic] and brutal attack perpetrated against the Plaintiff brought on by his best friend [Lewis], whom he accompanied to the staff canteen after fishing, heavy drinking, and intoxication. Sgt. Lawton having firsthand knowledge of. . .Lewis being a defective malefactor in the F.D.O.C., and whom [sic] despises and often attack [sic] inmates, had every conceivable reason to believe that under the circumstances of no staff, civilians, or inmates present, would present an impassable opportunity for. . .Lewis to initiate a salvage [sic], violent, and brutal attack against the Plaintiff, as he did.

(Id., docket p. 15).

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. at, 832 (1994)) (alterations and internal quotation marks omitted). "A prison official violates the Eighth Amendment 'when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk.'" *Id.* (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)). To prevail on such a claim, a plaintiff must show the existence of an "objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2737 (2015). "[A]n Eighth Amendment violation may not be predicated on exposure to *any* risk of serious harm;

13

the risk must be "substantial." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 258 (3d Cir. 2010) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (Eighth Amendment claim may be based on a condition of confinement "that is sure or very likely to cause serious illness and needless suffering.")). Plaintiff has not alleged such a risk.

Even if, as Plaintiff has alleged, Lawton knew that Lewis previously attacked other prisoners, Plaintiff has not alleged facts which tend to show that Lawton exposed Plaintiff to an intolerable risk of harm merely by walking into the canteen with Lewis. Plaintiff alleges no facts indicating that Lewis knew Plaintiff and had problems or issues with Plaintiff in the past, and that Lawton knew about it. Nor can Plaintiff's allegations be read to assert that Lawton knew that Lewis was likely to attack any and all inmates with whom Lewis had contact. Moreover, Lawton did not leave Lewis alone with Plaintiff, which may have posed a much greater risk to Plaintiff.

Liberally construing Plaintiff's allegations, one cannot say that Lawton exposed Plaintiff to an objectively intolerable risk of harm. Even if, in light of Lewis' alleged prior assaults on other prisoners, Lawton was negligent in allowing Lewis to enter the canteen, that does not amount to a constitutional violation. *See Hathcock v. Armor Corr. Health Servs.*, 186 Fed. Appx. 962, 963 (11th Cir. 2006) (unpublished) (allegation of negligence is not actionable under the Eighth or Fourteenth Amendment). Accordingly, because Plaintiff has failed to state a claim upon which relief may be granted, the claim is due to be dismissed. However, in an abundance of caution, the court will dismiss the failure to protect claim against Lawton without prejudice in the event that Plaintiff may be able to allege sufficient facts to support the claim.

Accordingly, it is **ORDERED** that:

1. Defendants' Motion to Dismiss (Dkt. 23) is **GRANTED**. The Complaint (Dkt. 1) is

**DISMISSED** without prejudice.

2. On or before **February 25, 2016**, Plaintiff may file and serve upon counsel for Defendants an Amended Complaint in accordance with this Order.[5] Failure to do so may result in the closure of this case without further notice. If Plaintiff elects to file an Amended Complaint, Defendants shall have twenty (20) days from the date of Plaintiff's filing to respond.

3. Because the court has granted Plaintiff leave to file an Amended Complaint, Plaintiff's Motion for Leave to Amend and/or Supplement Complaint (Dkt. 27) is **DENIED** as moot.

4. The **Clerk** is directed to send Plaintiff a Civil Rights Complaint Form with his copy of this Order.

**DONE and ORDERED** in Tampa, Florida on February 4th, 2016.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Plaintiff *pro se*
Counsel of Record

---

[5] Plaintiff must clearly designate on the face of the document that it is the "Amended Complaint." The Amended Complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original complaint by reference. The Amended Complaint supersedes the original complaint, and all claims must be raised in the Amended Complaint. Finally, Plaintiff must limit the allegations in the Amended Complaint to claims related to the claims asserted in the original complaint.